UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ROBERT L. FERREIRA,

    Plaintiff,

v.                          Case No. 08-C-0523

MICHAEL J. ASTRUE,

    Defendant.

---

DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
AND DISMISSING CASE

Plaintiff, Robert L. Ferreira, filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income. Ferreira alleges that he became disabled on November 15, 2000, due to obesity with resulting musculoskeletal complaints, a learning disability and alcoholism. (R. 13.) His claims were denied initially and upon reconsideration, and a hearing took place on January 17, 2008, following Ferreira's request. During that proceeding, Ferreira, who was represented by counsel, testified along with a vocational expert. The ALJ concluded that Ferreira was not disabled, and the Appeals Council denied his request for review making the ALJ's decision the final decision of the Commissioner.

On appeal, Ferreira argues that this matter should be remanded because the ALJ disregarded the opinions of a physical therapist, Joe Moore. In addition, the ALJ's

1

comments during the hearing demonstrate that the ALJ was incapable of rendering a fair judgment.

BACKGROUND

At the time of the hearing, Ferreira a thirty-eight year old high school graduate, had worked as a bartender and as a short order cook. (R. 20.) Ferreira testified that he was 5'11" and weighed approximately 300 lbs and received food stamps. (R. 285, 402.) He indicated that it was difficult for him to walk very far or to stand very long due to leg pain. (R. 412.)

Ferreira was hospitalized for detox in 2002 and medical records show he was significantly overweight with a history of alcohol abuse, hepatitis and hypertension. (R. 16.) In 2003, he had emergency treatment for a fracture of the left ankle after falling down while intoxicated. (R. 17.) The hospital treated his ankle, hepatitis, and hypertension, and administered psychotherapies. (R. 290.) Hospital personnel discussed the availability of inpatient treatment, but Ferreira declined and elected outpatient treatment at the Salvation Army. (R. 291.) Subsequent records showed healing, and during the hearing, Ferreira testified that he did not have problems with his ankle. (R. 17, 412.)

Ferreira went to the Salvation Army a few times a month and received anti-inflammatory medication or prescriptions but it was expensive. (R. 413.) In July 2007, the Salvation Army noted that Ferreira had limited ability to stand for long periods due to chronic knee and back pain. (R. 386.)

Dr. Bryan Schmitt conducted two consultative exams, commencing in December of 2004. Dr. Schmitt concluded that Ferreira had no joint effusion, no warmth and no erythema. (R. 17.) Ferreira had normal range of motion of his legs without muscle

spasm or atrophy. (*Id*.) Extended walking and standing were difficult due to his obesity and back pain. (*Id.*) In a November 2005 exam, Dr. Schmitt concluded Ferreira had a history of alcoholic hepatitis and hypertension but that this did not keep him from engaging in any work related activities. (*Id.*) Again, Ferreira noted difficulty in extended walking due to his obesity and his subjective complaints of ankle, knee and back pain. (*Id.*) Ferreira told Dr. Schmitt that "he could probably do some sit-down work but could not be on his feet to do extended work." (R. 331-332.) Dr. Schmitt concluded that Ferreira could perform work-related activities which involved standing and intermittent sitting. (R. 332.)

State agency reviewing physicians, Dr. Michael Baumblatt and Dr. Pat Chan opined that Ferreira could perform sedentary work. Dr. Keith Bauer, on the other hand, concluded that Ferreira did not have a severe mental impairment. (R. 355-356, 367.)

Ferreira underwent a psychological assessment by Peter Kores, Ed. D., at the request of the Division of Vocational Rehabilitation in April 2006. (R. 17.) Kores determined that Ferreira has a learning disability and that his alcohol dependence was in partial remission. (R. 17, 393.) Ferreira advised Kores that he had difficulty standing, bending, being on his feet, and was experiencing knee and back problems. When Kores asked the reasons for these difficulties, Ferreira stated that it was probably due to alcohol and putting a lot of weight on. (R. 388.) Kores opined that the primary factor affecting Ferreira's ability to secure employment was his alcohol dependence and that he had adequate intelligence for jobs with limited physical capacity needed. (R. 393.)

Ferreira participated in a situational work assessment at the Rehabilitation Center of Sheboygan, Inc., in November-December 2006. (R. 18.) The Rehabilitation Center noted that he had maintained his sobriety since July 2006. (*Id.*) Ferreira testified

3

at the hearing that he quit drinking because he thought it was contributing to his health problems and he could not afford it. (R. 404.) The Rehabilitation Center's assessment was that Ferreira required sedentary job tasks. (*Id.*) The assessment started by having Ferreira work for four hours per day then adding two hours work in the second week without problem. (R. 287) Ferreira's production rates increased once familiar with job tasks. (*Id.*) He demonstrated the ability to learn and to recall job tasks daily throughout the assessment, readily accepted all assigned tasks, and cooperated well with his assigned supervisors. (*Id*.)

In January of 2008, Ferreira was assessed by a physical therapist, Joe Moore. Two weeks prior to the hearing, Moore found that Ferreira had a body mass index of 41.3 and diagnosed Ferreira with degenerative joint disease with symptoms of bilateral knee pain, spasms of the lumbar spine, gait disturbance and shortness of breath. (R. 18.) At the time, Ferreira complained of depression and stress. (*Id.*)

Moore concluded that Ferreira had to take unscheduled ten minute breaks every two hours during an eight hour workday, he would be absent more than four days a month and he was limited to occasionally lifting ten pounds. (R. 382–385.) Ferreira's pain would interfere with attention and concentration needed to perform simple work tasks frequently to constantly and Ferreira was limited to "low stress" jobs due to his "frequent severe spasms" and constant knee pain. (R. 383.)

The ALJ found that Ferreira was not disabled under the Social Security Act. Applying the Agency's five-step sequential evaluation process for determining whether an

4

Case 2:08-cv-00523-CNC    Filed 07/30/10    Page 4 of 13    Document 14

individual is disabled, 20 C.F.R. § 404.1520(g) and 416.920(g), the ALJ concluded that Ferreira satisfied the first four steps but failed at the fifth step. (R. 21.)

At the fifth step, the ALJ determines whether the individual is able to do other work considering his residual functional capacity, age, education, and work experience. The burden is on the individual, but Social Security Administration is responsible for providing evidence that other work exists in significant numbers in the national economy to support a finding that an individual is not disabled. 20 C.F.R. § 404.1512(g).

In reaching his conclusion, the ALJ gave little weight to the opinion of Moore, the physical therapist, regarding the degree of Ferreira's limitations because his opinion was inconsistent with the overall medical record. (R. 19.) Furthermore, Moore, who examined Ferreira once, rested his opinion in part on Ferreira's subjective complaints of pain, psychological, cardiac, and respiratory functioning, which were beyond the expertise of a physical therapist. (*Id.*) Also, the ALJ felt that Moore was "bending over backwards to render an opinion beyond his expertise." (R. 19.)

The ALJ concluded that Ferreira had severe impairments including obesity, learning disability and alcoholism, but that these were longstanding conditions. Ferreira has been able to work with these conditions in the past, and there was no evidence of deterioration in these conditions. (R. 20.) The ALJ also concluded that Ferreira had the residual functional capacity to perform sedentary work except for the limitation to unskilled work which allows him to be off task 5% of the time. (*Id.*) Based on the testimony of the Vocational Expert, with regard for Ferreira's age, education, work experience, residual

5

functional capacity and adjustment to jobs that exist in a significant number in the national economy, the ALJ found Ferreira "not disabled." (R. 21.)

STANDARD OF REVIEW

A district court's review of a social security appeal is limited to determining whether the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir.1998). However, "[i]n coming to his decision ... the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Scheck*, 357 F.3d at 699. Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

Further, the ALJ's decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski*, 245 F.3d at 889.

ANALYSIS

Initially, Ferreira argues that the ALJ failed to take into consideration the opinion of a physical therapist who issued restrictions in 2008. He reasons that the ALJ did not apply SSR 06–03p for evaluating opinions from sources who are not "Acceptable Medical Sources." (Petr.'s Br. 5).

SSR 06–03p recognizes that an ALJ may give an opinion from an "acceptable medical source" greater weight than an opinion from a party who is not an "acceptable medical source." In weighing medical opinions from a non-treating physician, factors under 20 C.F.R. Part 404, Subpart P, § 1527(d)(3)–(6) should be considered. *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). When an ALJ's decision on weighing a medical opinion from a non-treating physician is based on these factors, it is supported by substantial evidence. *See White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).

The ALJ must evaluate all medical opinions regardless of their sources. 20 C.F.R. § 404.1527(d). He cannot disregard an opinion simply because it is not from an acceptable medical source. *Zblewski v. Astrue*, 302 F. App'x. 488, 493 (7th Cir. 2008). However, here, the ALJ did not fail to take into consideration the opinion of the physical therapist, Joe Moore, nor did he give less weight to it simply because a physical therapist is not considered to be an "acceptable medical source." *See* S.S.R. 96-2p; 20 C.F.R. § 404.1502. The ALJ confirms this stating:

> . . . [T]he degree of limitations outlined by the therapist is inconsistent with the overall medical evidence of record. In addition, little weight can be given to the therapist's opinions especially in light of the fact that he indicates he saw the claimant on only one occasion and appears to have based his opinions in part on the claimant's statements. The physical

7

> therapist rendered opinions on psychological, cardiac, and respiratory functioning, which were clearly beyond any expertise of a physical therapist.

(R. 19.)

This line of reasoning parallels the ALJ's rationale in *White* where the court determined that the opinions of two doctors were not given significant weight for mental impairments because neither doctor specialized in mental impairments. *White*, 415 F.3d at 658. Indeed, one of the doctors, who examined the claimant once, based his opinion entirely on the claimant's subjective complaints. *Id*. The Seventh Circuit found that the ALJ's finding was reasonable and adequate to support his conclusions. *Id.*

The ALJ's rationale here, while succinct, referred to the factors under 20 C.F.R. Part 404, Subpart P, § 1527(d)(3)–(6) to support it. These factors include the physician's specialty, familiarity with the patient, and the patient's medical history. *White,* 415 F.3d at 658-659. Moreover, the ALJ does not have to respect expert opinions that are given outside a witness's field of expertise. *Schmidt v. Apfel*, 201 F.3d 970, 973 (7th Cir. 2000). Regardless, the ALJ must rely on medical opinions based on objective observations as opposed to claimant's subjective complaints. *Rice v. Barnhart*, 384 F.3d 363, 370-371 (7th Cir. 2004); *See Zblewski*, 302 F. App'x. at 494 (where an ALJ was entitled to reject a nurse who was not an acceptable medical source because her opinion was not based on objective observations).

Moore diagnosed degenerative joint disease, and noted that Ferreira complained of depression and stress with symptoms of pain in the knees and back. (R. 18.) Additionally, Moore concluded that Ferreira would have difficulties carrying out simple

work tasks due to his symptoms and would only be able to sit for four hours and walk for less than two hours in an eight hour workday. (*Id.*) Hence, at first glance, Moore's medical opinion suggests that Ferreira cannot carry out sedentary unskilled work.

On the other hand, Dr. Schmitt stated that Ferreira could do work related activities which involved standing and intermittent sitting. (R.332.) Also, Ferreira told Dr. Schmitt that he could probably do some sit-down work. (R. 331–332.) In addition, Kores stated that the primary factor in Ferreira's ability to secure employment was his alcohol dependance and that he had adequate intelligence for jobs with limited physical capacity needed. (R. 393.) According to the work assessment conducted in November-December 2006, Ferreira was able to work for six hours without problem, and could increase his production rate after becoming familiar with job tasks while being limited to sedentary work. (R. 287.) The ALJ discredited the State Agency's opinion that Ferreira's physical impairments and mental impairments were not severe, but credited its conclusion that he could still do sedentary unskilled work which allows him to be off task 5% of the time. (R. 20.) The ALJ observed that there is no evidence in the record of deterioration in Ferreira's longstanding impairments (obesity, learning disability and alcoholism). (*Id.*) Substantial evidence supports these determinations. In addition, Ferreira testified at the hearing that his ankle did not cause him anymore trouble. (R. 412.) And Kores noted that Ferreira said his pains were probably due to obesity and alcoholism. (R. 388.) Further, Ferreira claimed that he had been sober since mid 2006 and he testified that he had been trying to eat healthier and had lost weight. (R. 417.) In any event, a claimant has the burden to prove that he or she is disabled in the social security context, 20 C.F.R. § 404.1512(c), and Ferreira failed to meet this burden.

Next, Ferreira argues that he was deprived of a full and fair hearing because the ALJ was biased against him for past alcohol abuse. There is a presumption that an administrative adjudicator is unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). This presumption can be rebutted and the matter remanded if the ALJ showed "deep-seated favoritism or antagonism that would render fair judgment impossible." *See Liteky v. U.S.*, 510 U.S. 540, 555 (1994). If isolated parts of an ALJ's conduct were challenged but the record as a whole demonstrated fundamental fairness to the litigant, the ALJ's decision will not be remanded. *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005).

The standard in "determining whether an ALJ's display of bias or hostility requires setting aside his findings and conclusions . . . is an exacting one." *NLRB v. Webb Ford, Inc.*, 689 F.2d 733, 737 (7th Cir. 2007). Comments by a judge that do not amount to grounds for bias challenge are expressions of "impatience, dissatisfaction, annoyance, and even anger," that are within bounds of imperfect men and women. *Liteky*, 510 U.S. at 555-556.

The comments at issue in this case were made by the ALJ toward the end of the hearing. After asking Ferreira whether he can buy liquor with food stamps, Ferreira answered "No." Then the following exchange took place:

>     ALJ:        - - in terms of your income, the only thing you have is food stamps?
>     Ferreira:   Yes.
>     ALJ:        And you can't buy liquor with food stamps, can you?
>     Ferreira:   No.
>     ALJ:        And, presently you are behind on your rent?
>     Ferreira:   Yeah.
>     ALJ:        Well on the west side of Chicago, you turn in the food stamps for cash, and then you buy your

|           | Turkey Jerk. I mean it's, that's how it's done. I mean just - - |
|-----------|---|
| Attorney: | Oh. |
| ALJ: | - - so that you know that. |
| Attorney: | Oh, okay. |
| ALJ: | It just happens. |
| Attorney: | Oh. But this is Sheboygan, Judge. |
| ALJ: | Oh, well, I'm sure really probably slower drinkers in Sheboygan and haven't figured that out. You're right. |
| Attorney: | Well, I just had a client a from the south side of Chicago. |
| ALJ: | Huh? |
| Attorney: | I just had a client from the south side of Chicago. |
| ALJ: | Well, those guys do it, too. |
| Attorney: | Yeah. |
| ALJ: | Actually. They may even be a little faster than the west side. I'm not really sure. But I think pretty much how it goes. |
| Attorney: | Well, I don't know which is the rough side. |
| ALJ: | Neither one of them are really a walk in the park, so to speak. |
| Attorney: | They are? |
| ALJ: | No. |
| Attorney: | Oh. |
| ALJ: | Even the people who live in those neighborhoods don't want to walk after six. |
| Attorney: | Oh. Well, I think the only thing that you have to fear is fear itself. |
| ALJ: | And a mugging. That, that's something worth fearing as well. |
| Attorney: | Is that right? |
| ALJ: | Stray bullets, stuff like that. |
| Attorney: | Well, it looks good in the obituary. |
| ALJ: | I can get into that question. We won't go - - |
| Attorney: | It looks good in the obituary, Judge. |
| ALJ: | I mean, I've, I've, I've been chased out of one of those neighborhoods with bullets flying around my head on one occasion, so. |
| Attorney: | So have I. |
| ALJ: | Yeah, I - - |

| | |
|---|---|
| Attorney: | So have I on the north side here in Milwaukee. |
| ALJ: | Well, see there you go. |
| Attorney: | Yeah. |
| ALJ: | Well, any way, we beat that to death. Let's move on. |
| Attorney: | Oh, yeah we certainly did beat that to death, so. Okay. |

(R. 409-411.)

Ferreira believes the ALJ was accusing Ferreira of taking the food stamps and turning them in for cash to buy alcohol. (Pl.'s Br. 7). However, the comments were not directed against Ferreira but rather drinkers from Chicago. Nonetheless, Ferreira maintains that the ALJ made a derogatory remark against drinkers in Sheboygan by saying they are "slow." (Pl.'s Br. 7). In that connection, the ALJ stated that drinkers in Sheboygan may be slower in figuring out that they could turn in food stamps to buy alcohol, but it is a reach to conclude that the ALJ had a "deep-seated favoritism and antagonism" against Ferreira and therefore was unable to render a fair judgment. *See Liteky*, 510 U.S. at 556.

In *U.S. v. Donato*, the judge's comments required a remand because of the extent of hostility and the frequency of the comments. *Donato*, 99 F.3d 426, 435 (1996). The judge berated, interrupted and otherwise spoke negatively to the defendant's attorney approximately 65 times. *Id.* Similarly, in *Antar*, the district judge was presiding over a criminal case charging defendants of conspiracy to commit securities fraud. *SEC v. Antar (In re Antar)*, 71 F.3d 97, 102 (3rd Cir. 1995). The district judge stated that his goal was to recover funds that the public lost by defendant's schemes, thereby demonstrating that the judge was biased against the defendant, based on information unrelated to the trial.

In the case at bar, the ALJ's inappropriate remarks do not establish that he was berating or interrupting Ferreira. In *Bayliss*, the court concluded that the claimant failed to show that the ALJ was unable to render a fair judgment, merely by expressing displeasure with the conduct of claimant's counsel. Pivotal observation in that case was the ALJ's detailed, reasoned grounds for denying the DIB and SSI benefits. The ALJ disregarded the opinions of several doctors who supported the claimant. *Bayliss*, 427 F.3d at 1217. In this case, the ALJ has not shown a deep-seated favoritism or antagonism against Ferreira and his decision is duly supported by the record. However, this holding should not be interpreted as the court sanctioning or even condoning the comments. These comments should not have been made even if they do not demonstrate bias against Ferreira. Inappropriate and disrespectful language in a courtroom by a judicial officer undermines confidence in the courts and the judicial process. Nevertheless, the decision to deny Ferreira's application for benefits was based on substantial evidence in the record. Now, therefore,

IT IS ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE